IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, LLC,<br><br>Defendants. | Civil Action No. 2:20-cv-01763<br><br>Hon. Nitza I. Quiñones Alejandro |

**DEFENDANTS COMCAST CORPORATION AND COMCAST CABLE COMMUNICATIONS, LLC'S REPLY MEMORANDUM IN SUPPORT OF THEIR <u>MOTION TO COMPEL ARBITRATION AND STAY LITIGATION</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1
II. LEGAL STANDARDS ..................................................................................................1
III. ARGUMENT ..................................................................................................................2
    A. Comcast Presented Competent Evidence Establishing Contract Formation. ..........2
    B. Plaintiff Failed to Submit Evidence to Rebut Comcast's Showing of Contract Formation, and He Is Bound by the Subscriber Agreement ......................3
    C. Plaintiff Is Estopped From Avoiding the Subscriber Agreement. ............................7
    D. Plaintiff's Other Attempts to Avoid Arbitration Fail...............................................10
IV. CONCLUSION.............................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amkor Tech., Inc. v. Alcatel Bus. Sys.*,
    278 F. Supp. 2d 519 (E.D. Pa. 2003) .......................................................................................8

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ....................................................................................................2

*Bouriez v. Carnegie Mellon University*,
    359 F.3d 292 (3d Cir. 2004) ....................................................................................................7

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
    584 F.3d 513 (3d Cir. 2009) ..................................................................................................10

*Cordoba v. DIRECTV, LLC*,
    347 F. Supp. 3d 1311 (N.D. Ga. 2018), *rev'd*, 801 F. App'x 723 (11th Cir. 2020)..................11

*E.I. DuPont de Nemours v Rhone Poulenc Fiber and Resin*,
    269 F.3d 187 (3rd Cir. 2001)...................................................................................................8

*Glenwright v. Carbondale Nursing Home, Inc.*,
    No. 16-0926, 2017 WL 1092541 (M.D. Pa. Mar. 23, 2017).....................................................2

*Griffin v. Credit One Fin.*,
    No. 15-3700, 2016 WL 538242 (E.D. Pa. Feb. 11, 2016) .......................................................4

*Griswold v. Coventry First LLC*,
    762 F.3d 264 (3d Cir. 2014) ....................................................................................................8

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    716 F.3d 764 (3d Cir. 2013) ................................................................................................1, 2

*Haskins v. First Am. Title Ins. Co.*,
    866 F. Supp. 2d 343 (D.N.J. 2012) .........................................................................................7

*HealthplanCRM, LLC v. AvMed, Inc.*,
    No. 19-1357, 2020 WL 2028261 (W.D. Pa. Apr. 28, 2020).............................................7, 8, 9

*Hearn v. Comcast Cable Commc'ns, LLC*,
    415 F. Supp. 3d 1155 (N.D. Ga. 2019) (appeal filed, No. 19-14455
    (11th Cir. Nov. 1, 2019) ...................................................................................................10, 11

*Hutt v. Xpressbet, LLC,*
    No. 20-494, 2020 WL 2793920 (E.D. Pa. May 29, 2020) ...................................................... 7

*Invista S.A.R.L. v. Rhodia, S.A.,*
    625 F.3d 75 (3d Cir. 2010) ................................................................................................. 7, 9

*In re Jiffy Lube,*
    847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012) ....................................................................... 11

*Losapio v. Comcast Corp.,*
    10-3438, 2011 WL 1497652 (N.D. Ga. Apr. 19, 2011) .......................................................... 5

*Montoya v. Comcast Corp.,*
    No. 15-02573, 2016 WL 5340651 (E.D. Cal. Sept. 23, 2016) ................................................ 9

*O'Neil v. Comcast Corp.,*
    No. 4249, 2019 WL 952141 (N.D. Ill. Feb. 27, 2019) ........................................................... 6

*Parziale v. HP Inc.,*
    No. 19-5363, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ................................................. 3

*Revitch v. DirecTV, LLC,*
    No. 18-01127, 2018 WL 4030550 (N.D. Cal. Aug. 23, 2018), *aff'd*, 2020 WL
    5814095 (9th Cir. Sept. 30, 2020) ........................................................................................ 11

*In re Rotavirus Vaccines Antitrust Litig.,*
    789 F. App'x 934 (3d Cir. 2019) ............................................................................................ 7

*Sanford v. Bracewell & Guiliani, LLP,*
    618 F. App'x 114 (3d Cir. 2015) ............................................................................................ 7

*Schwartz v. Comcast Corp.,*
    256 F. App'x 515 (3d Cir. 2007) ................................................................................. 4, 5, 6, 11

*Strange v. Comcast Corp.,*
    No. 18-4032, 2018 WL 6602072 (E.D. Pa. Dec. 14, 2018) ........................................ 1, 2, 6, 10

*Wexler v. AT&T Corp.,*
    211 F. Supp. 3d 500 (E.D.N.Y. 2016) .................................................................................. 11

*Williams v. Ying Zhou*,
    No. 145544, 2019 WL 1379876 (D.N.J. Mar. 27, 2019) ........................................................ 3

*Ziemer v. Norfolk S. Ry. Co.,*
    No. 16-01001, 2018 WL 1123732 (M.D. Pa. Mar. 1, 2018) ................................................... 5

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................................................2

Fed. R. Civ. P. 56(e) ........................................................................................................................6

Fed. R. Civ. P. 56(e)(2) ...................................................................................................................5

Restatement (Second) of Contracts § 23.........................................................................................5

## I.   INTRODUCTION

In its Motion, Comcast presented a wealth of competent evidence that Plaintiff is bound to arbitrate this dispute by the Subscriber Agreement under which he receives Comcast cable and internet service at his home, where he resides with his parents and operates a business. Comcast thereby satisfied its burden on contract formation and shifted to Plaintiff the burden of presenting *evidence* to rebut Comcast's showing. Perhaps recognizing the futility of such an effort, Plaintiff resorts to collateral attacks on issues that bear no relevance to the resolution of Comcast's Motion. Plaintiff offers neither response nor rebuttal on the key facts concerning his use of Comcast service at his home and exercise of control over the Comcast account, and instead focuses on the alleged merit of his underlying claims. *See, e.g.*, Plaintiff's Opposition, Dkt. 20-1 ("Opp'n") at 2-4 (arguing incorrectly that Comcast improperly obtained Plaintiff's credit report during a telephone call with him).

Given Plaintiff's failure to rebut these central facts, it stands undisputed that Plaintiff has knowingly received substantial direct benefits as a "user" under the Subscriber Agreement that governs service at his home. He is thus bound directly by the arbitration provision in that Agreement, which by its terms covers broadly all disputes between the parties. In addition, under Pennsylvania law, he is equitably estopped by virtue of his receipt of these benefits from repudiating the arbitration agreement.

## II.   LEGAL STANDARDS

Comcast's Motion should be resolved under "the standard applied to motions for summary judgment under Federal Rule of Civil Procedure ('Rule') 56." *Strange v. Comcast Corp.*, No. 18-4032, 2018 WL 6602072, at n.7 (E.D. Pa. Dec. 14, 2018) (Quiñones, J.) (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013)). Under Rule 56, a plaintiff cannot merely "assert[] there is a genuine dispute of material fact" regarding whether he was bound

by the Subscriber Agreement, he must **"support that assertion" with evidence**. *Guidotti*, 716 F.3d at 772 (emphasis added) (citing Fed. R. Civ. P. 56(a)); *see also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). Nor is formal discovery required before ruling on a motion to compel arbitration where, as here, the nonmoving party does not request discovery and "the necessary information is already part of the record." *Strange*, 2018 WL 6602072, at n.7 (citing *Glenwright v. Carbondale Nursing Home, Inc.*, No. 16-0926, 2017 WL 1092541, at *3 (M.D. Pa. Mar. 23, 2017)).[1]

### III.  ARGUMENT

#### A.  Comcast Presented Competent Evidence Establishing Contract Formation.

Comcast has demonstrated that Plaintiff is bound by the Subscriber Agreement, which by its terms binds "users" of the service. *See* Comcast's Motion to Compel Arbitration and Stay Litigation (Dkt. 17) ("Motion") at 14-16. Specifically, the uncontroverted evidence demonstrates that (1) Plaintiff receives Comcast services at the Shelton Home, where he resides and operates a business; (2) Comcast has provided a physical copy of the Subscriber Agreement with its arbitration provision to the Shelton Home on numerous occasions, including in August 2017; (3) the Subscriber Agreement is also made available online for customers such as Plaintiff; (4) Plaintiff associated his mobile telephone number with the Shelton Home account; (5) Plaintiff exercises control over the Shelton Home account and (6) has demonstrated familiarity with the Subscriber Agreement and its arbitration clause by undertaking untimely opt outs from the arbitration agreement; (7) Plaintiff solicits Comcast personnel for service-related assistance and information

---

[1] If, despite Plaintiff's lack of rebuttal on the key facts, this Court finds genuine disputes of material fact as to whether Plaintiff is bound to arbitrate his claims, Comcast requests a trial on any factual issues pursuant to 9 U.S.C. § 4.

in relation to the Shelton Home account; and, according to Plaintiff, (8) he set up the relevant Comcast Xfinity online account on Comcast's website.  *See* Decl. of Julie Busta (Dkt. 17-2) ("Busta Decl.") ¶¶ 2, 6-7, Ex. D at 2:7-20; 3:2-4; 7:13-15; 13:8-15; Decl. of Nicole Patel (Dkt, 17-1) ("Patel Decl.") ¶ 5; Decl. of Ann Marie Miriello (Dkt. 17-3) ("Miriello Decl.") ¶ 10.  Comcast thus demonstrated with competent evidence that Plaintiff is bound by the Subscriber Agreement and the arbitration provision contained therein.

> **B.    Plaintiff Failed to Submit Evidence to Rebut Comcast's Showing of Contract Formation, and He Is Bound by the Subscriber Agreement**

Plaintiff argues that the Subscriber Agreement cannot apply to him because he was a minor at the time the Shelton Account was initiated and he did not personally see or acknowledge the agreement or its terms at that time.  *See* Opp'n at 6.  Plaintiff also states conclusorily that he "has no role in management of the account which his father controls and pays for." *Id.* at 6–7.  As a result, Plaintiff contends, he "is not and cannot be a signatory to the 2006 Subscriber Agreement." *Id.* at 7.  These arguments miss the mark.

The evidence shows that Plaintiff is and has been an adult for many years enjoying Comcast's service and exercising significant control over his family's Comcast account.  And, during and well into Plaintiff's adulthood, Comcast has provided a physical copy of the Subscriber Agreement to the Shelton Home numerous times, and the Subscriber Agreement "is also made available online at https://www.xfinity.com/corporate/customers/policies/subscriberagreement." Miriello Decl. ¶ 10.  In addition to Comcast's uncontroverted evidence that the Subscriber Agreement is made available online, the internet archive's Wayback Machine—the contents of which this Court may properly take judicial notice[2]—confirms that the Subscriber Agreement has

---

[2] *See, e.g.*, *Williams v. Ying Zhou*, No. 145544, 2019 WL 1379876, at *4 (D.N.J. Mar. 27, 2019) (taking judicial notice of content found on a website, and noting that "[t]he internet archive's Wayback Machine confirms that the content of the website has been substantially consistent as far

been substantially consistent and has at all times contained a binding arbitration provision in Section 13.[3]  As the Third Circuit held in *Schwartz v. Comcast Corp.*, this is sufficient evidence that "[t]he terms of the Subscriber Agreement were available to [plaintiff] at all times[.]"  256 F. App'x 515, 520 (3d Cir. 2007) ("[Plaintiff] argues that the contract was too difficult to find, but the record demonstrates that the Agreement is available to all of Comcast's subscribers via its website.").

    Plaintiff's claim that he was never presented with or knew about the Subscriber Agreement is further belied by his pre-suit gamesmanship regarding the initiation of a second, fake account for Comcast services at the Shelton Home and his subsequent attempt in July 2018 to opt out of arbitration by submitting opt-out requests ***on Comcast's website***—first for the fake account and then for the Shelton Home account just days later.  *See* Motion at 10-11 (citing Patel Decl. ¶¶ 9, 14).  Plaintiff's Opposition and supporting declaration are silent on Comcast's evidence concerning Plaintiff's untimely online arbitration opt-out attempts and his admission regarding setting up the relevant Xfinity account on Comcast's website.  But Plaintiff cannot overcome Comcast's showing or satisfy his burden with silence.  *See Griffin v. Credit One Fin.*, No. 15-3700, 2016 WL 538242, at *1 (E.D. Pa. Feb. 11, 2016) (explaining that, after defendant meets its initial burden, plaintiff "must counter with specific facts showing that there is a genuine issue for trial"

---

back as December 16, 2013"); *Parziale v. HP Inc.*, No. 19-5363, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (same and collecting cases).

    [3]  *See, e.g.*, January 2018 Subscriber Agreement § 13 (available at https://web.archive.org/web/20180118050456/https://www.xfinity.com/Corporate/Customers/Policies/SubscriberAgreement); June 2018 Subscriber Agreement § 13 (available at https://web.archive.org/web/20180615003322/https://www.xfinity.com/Corporate/Customers/Policies/SubscriberAgreement); July 2018 Subscriber Agreement § 13 (available at https://web.archive.org/web/20180718045256/https://www.xfinity.com/corporate/customers/policies/subscriberagreement); January 2020 Subscriber Agreement § 13 (available at https://web.archive.org/web/20200128001316/https://www.xfinity.com/Corporate/Customers/Policies/SubscriberAgreement).

(citation and quotation marks omitted)). Indeed, his failure to respond requires that these facts be taken as undisputed. *See Ziemer v. Norfolk S. Ry. Co.*, No. 16-01001, 2018 WL 1123732, at *2 (M.D. Pa. Mar. 1, 2018) (citing Fed. R. Civ. P. 56(e)(2))).[4]

In sum, binding Third Circuit precedent precludes Plaintiff from avoiding the Subscriber Agreement with vague, self-serving (not to mention demonstrably false) claims of youth and ignorance. *See Schwartz*, 256 F. App'x at 520 (rejecting plaintiff's claim he could not find the Subscriber Agreement because it was available on Comcast's website "at all times"). As the *Schwartz* court held, "***[w]hether or not [plaintiff] received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without becoming bound by that agreement***." *Id.* at 518 (emphasis added) (citing Restatement (Second) of Contracts § 23))). For the same reasons, *Schwartz* renders Plaintiff's claim that he "has no role in management of the account" (Opp'n at 6–7) irrelevant. *Id.* Whatever Plaintiff may mean by "management" or "control" of the service, he does not and cannot dispute

---

[4] In addition, Plaintiff never denies providing the Shelton Home address in connection with the fake account (or that he attempted to opt out of arbitration with respect to that account). *See generally* Shelton Decl. Instead, Plaintiff merely avers that he did not "affirmatively call Comcast for any reason" on June 22, 2018. *Id.* ¶ 4. But the Weinstein Decl. makes clear that the relevant records reflect that Plaintiff's order for service for the fake account occurred during a callback phone call made to Plaintiff. *See* Weinstein Decl. ¶ 5-6. Plaintiff's declaration is otherwise entirely consistent with the facts as set forth in the Weinstein Declaration insofar as Plaintiff admits that he "feigned interest in the services offered" (Shelton Decl. ¶ 5) and Comcast's records likewise reflect that Plaintiff placed an order for service that he later canceled (Weinstein Decl. ¶¶ 6-11). To be clear, Plaintiff elsewhere objects to Ms. Weinstein's declaration as hearsay, *see* Opp'n at 1, fn. 1, but that objection is meritless. Ms. Weinstein's declaration is "based upon information and records gathered by [her] or others within the course and scope of [her] duties," and as a part of her "job duties and responsibilities, [she] is familiar with the business practices of Comcast and its e-tail Vendors regarding the residential subscriber sign-up process." Weinstein Decl. ¶¶ 1-2. This is competent evidence. *See, e.g.*, *Losapio v. Comcast Corp.*, 10-3438, 2011 WL 1497652, at *3 (N.D. Ga. Apr. 19, 2011) ("However, the Schultz declaration is adequate evidence of Comcast's routine business practice, because it is based upon records made by Comcast and its billing vendor in the regular course of business." (citation omitted)).

Comcast's evidentiary showing that Plaintiff exhibits substantial access to and control of the service.  For example:

- Plaintiff admitted to using Comcast service including the internet, cable service and the XI platform (s*ee* Busta Decl., Ex. D at 2:16-20; 15:7-16);

- Plaintiff demonstrated knowledge and control over Comcast equipment at the Shelton Home, including troubleshooting (*see id.* at 7:13-15; 8:4-19; 14:5-9);

- Plaintiff associated his mobile number with the Shelton Home account, the very number on which he alleges Comcast called him (*see id.* at 3:9-18; 7:21-25);

- Plaintiff expected his mobile telephone number to access the serial number associated with the Comcast equipment at the Shelton Home (s*ee id.* at 3:9-18); and

- Plaintiff stated he set up the relevant Xfinity account on the Comcast website (*see id.* at 13:8-15).

By failing to rebut this (or any) of the evidence showing his use and control over the Comcast service at the Shelton Home, Plaintiff concedes all of it under Rule 56.  *See* Fed. R. Civ. P. 56(e) (providing that the failure to properly address a fact permits it to be considered undisputed and that judgment may be granted on undisputed facts).  As in *Schwartz*, "the record demonstrates that the [Subscriber] Agreement is available to all of Comcast's subscribers via its website," Plaintiff had notice of the agreement, and he is therefore bound by its terms by using the service. *Schwartz*, 256 F. App'x at 518, 520.[5]

---

[5] Plaintiff attempts to distinguish "[a]ll of the cases cited by Comcast" on grounds that the cases on which it relies required that the user "personally open[]" and "personally purchase[]" the services provided under the Subscriber Agreement.  *See* Opp'n at 7 (citing *Strange*, 2018 WL 6602072, at \*4; *O'Neil v. Comcast Corp.*, No. 4249, 2019 WL 952141, at \*2 (N.D. Ill. Feb. 27, 2019); and *Schwartz*, 256 F. App'x at 518).  But even a cursory review of those cases confirms that none of them purport to impose any such requirement, let alone both of them.

### C. Plaintiff Is Estopped From Avoiding the Subscriber Agreement.

In the alternative, and even assuming (contrary to the evidence) that Plaintiff is not bound directly as a "user" of the Comcast services at the Shelton Home, the doctrine of equitable estoppel prevents Plaintiff from receiving direct benefits from the Comcast agreement and then attempting to avoid the agreement's terms, including its arbitration provision. *See* Motion, at 16-17; *HealthplanCRM, LLC v. AvMed, Inc.*, No. 19-1357, 2020 WL 2028261, at *14 (W.D. Pa. Apr. 28, 2020) (where a party "'has reaped the benefits of a contract containing an arbitration clause,' that party will be compelled to arbitration to the same extent as a signatory of the agreement" (quoting *Invista S.A.R.L. v. Rhodia*, S.A., 625 F.3d 75, 85 (3d Cir. 2010))). Ignoring this precedent, Plaintiff claims that equitable estoppel is unrecognized as a matter of law in the context of arbitration agreements, and only applies in cases in which a plaintiff asserts a claim for breach of the underlying agreement or a claim that derives from the agreement. Comcast addresses these arguments in turn.

*First*, as Plaintiff's own authority makes clear,[6] courts in this Circuit routinely apply equitable estoppel in the arbitration context. *See*, *e.g.*, *In re Rotavirus Vaccines Antitrust Litig.*, 789 F. App'x 934, 938, n.20 (3d Cir. 2019) ("However, because this case involves a signatory attempting to bind a non-signatory, the correct test to be applied is whether the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." (citation omitted)); *HealthplanCRM*, 2020 WL 2028261, at *14 (enforcing arbitration agreement under direct benefits theory of estoppel); *Hutt v. Xpressbet, LLC*, No. 20-

---

[6] *See, e.g.*, Opp'n at 9 (citing *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 118 (3d Cir. 2015) (applying equitable estoppel to bind a non-signatory to arbitration agreement)); Opp'n at 9 (citing *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 355 (D.N.J. 2012) (evaluating direct benefits theory of equitable estoppel); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 295 (3d Cir. 2004) (same)).

494, 2020 WL 2793920, at *6 (E.D. Pa. May 29, 2020) (enforcing arbitration agreement under principles of estoppel); *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F. Supp. 2d 519, 523 (E.D. Pa. 2003) (enforcing arbitration agreement under direct benefits theory of estoppel).

*Second*, equitable estoppel is not, as Plaintiff suggests, limited to scenarios where a party is "seeking to enforce" the terms of an agreement or asserting a "breach of contract claim[.]" Opp'n at 9. Instead, Plaintiff can avoid equitable estoppel ***only if*** he did ***not*** "***knowingly exploit***" the agreement. *See Griswold v. Coventry First LLC*, 762 F.3d 264, 273 (3d Cir. 2014) (emphases added) (quoting *E.I. DuPont*, 269 F.3d at 199). And, as explained in *Griswold*, a party "knowingly exploits" an agreement ***either*** "(1) by knowingly seeking and obtaining direct benefits from that contract; ***or*** (2) by seeking to enforce terms of that contract or asserting claims based on the contract's other provisions." 762 F.3d at 271-72 (emphasis added) (citations omitted). In other words, "[u]nder the first theory, courts prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *E.I. DuPont*, 269 F.3d at 200.[7]

Accordingly, Plaintiff is equitably estopped from avoiding arbitration if he "knowingly exploited" the Subscriber Agreement by obtaining direct benefits provided pursuant to its terms.

---

[7] Plaintiff's argument that his claims "do not arise in any respect from the use of his father's service" and do not "derive from any hypothetical rights or privileges granted by the 2006 Subscriber Agreement" (Opp'n at 9) thus misses the mark. It is not necessary that the underlying controversy arise from the agreement sought to be enforced, but rather just that the party seeking to disavow the agreement knowingly benefitted from it. Further, the "relationship of the alleged wrongs to [his] obligations and duties in the" Subscriber Agreement do not matter. *E.I. DuPont*, 269 F.3d at 201. Nor does it matter whether his "claims [are] intertwined with the underlying contractual obligations." *Id.* That model of equitable estoppel applies only where ***a non-signatory*** attempts to bind ***a signatory*** to the terms of an agreement. *Id.* (citation omitted); *see also id.* at 199 (same). Similarly, Plaintiff's attempt to distinguish *HealthplanCRM* on the grounds that Plaintiff is not his father's agent (Opp'n at 10) fails because agency was an independent and sufficient—***not a necessary***—basis for binding the non-signatory to the arbitration agreement in *HealthplanCRM*. *HealthplanCRM*, 2020 WL 2028261, at *18-19.

*Griswold*, 762 F.3d at 271-72.  On *that* question there is no dispute, and Plaintiff is therefore bound by the Subscriber Agreement, including its arbitration provision.  *See, e.g.*, *id.*; *HealthplanCRM*, 2020 WL 2028261, at *14; *see also Montoya v. Comcast Corp.*, No. 15-02573, 2016 WL 5340651, at *1 (E.D. Cal. Sept. 23, 2016) ("Plaintiff['s] admitted use of [Comcast's] services demonstrates Plaintiff[] knowingly exploited the agreement for [Comcast's] services.").[8]

*Finally*, although not expressly required, fundamental fairness is served by enforcing the Subscriber Agreement.  Comcast does not, as Plaintiff claims, argue that "anyone who has ever watched television in Plaintiff's father's home . . . would be deemed to have assented to a contract with Comcast."  Opp'n at 7.  Nor would an order compelling arbitration in this case turn on such an argument, as Plaintiff cannot properly be described as simply someone "who has ever watched television in Plaintiff's father's home."  *Id.*  Rather, the undisputed evidence demonstrates that Plaintiff (1) had actual and constructive knowledge of the Subscriber Agreement, (2) accesses and controls the Comcast services provided to him at his own place of residence and where he operates a business, (3) associated his mobile telephone number with the account, and (4) enjoys the full privileges of any nominal accountholder.  *See supra* at 2-3, 6 (citing undisputed facts).

---

[8] Plaintiff's attempt to distinguish *Montoya* because it purportedly turned on whether the plaintiffs' claims were "intertwined" with Comcast service and that plaintiffs were "personally subscribing" to Comcast service (Opp'n at 10) fails.  In this Circuit, equitable estoppel applies where a party receives a direct benefit, regardless of the nature of the claims asserted by the party in the action.  *See Invista*, 625 F.3d at 85.  Thus, as set forth in Comcast's Motion, *Montoya*'s recitation of Ninth Circuit law on that point is inapposite.  *See* Motion at 17.  As to Plaintiff's claim that the decision in *Montoya* turned on the plaintiffs' "personal" subscription to Comcast services, *see* Opp'n at 10, that is false.  As in this case, the nominal accountholder for service at the *Montoya* plaintiffs' address was "***not party to th[e] lawsuit***."  *Montoya*, 2016 WL 5340651, at *1.

### D.     Plaintiff's Other Attempts to Avoid Arbitration Fail.

As set forth above, the Subscriber Agreement, broadly requires arbitration of "[a]ny Dispute involving [Plaintiff] and [Comcast]." Miriello Decl., Ex. C § 13(a).[9] To be sure, the parties dispute the merits of Plaintiff's claims. But what is not in dispute is that at the time Plaintiff called Comcast "to advise that he never consented to have his credit report accessed by Comcast" (Compl. ¶ 8), he did so as a longtime user of Comcast's services provided to the Shelton Home. He associated the mobile number he alleges Comcast called with the Shelton Home account, and the fake order he placed that triggered Comcast's credit check was for duplicative service at the Shelton Home. Because it cannot be said with "positive assurance" that the arbitration provision "is not susceptible of an interpretation that covers the asserted dispute," Plaintiff must arbitrate his dispute. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009) (citation omitted).

For his part, Plaintiff neither acknowledges the presumption in favor of arbitrability—under which "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" *Strange*, 2018 WL 6602072, at *4—nor contests that his claims fall within the broad scope of the arbitration provision. Instead, he attempts to avoid arbitration by presenting—at various points in his brief—the out-of-circuit (and on appeal) decision in *Hearn v. Comcast Cable Commc'ns, LLC*, 415 F. Supp. 3d 1155, 1164 (N.D. Ga. 2019) (appeal filed, No. 19-14455 (11th Cir. Nov. 1, 2019)). Plaintiff's reliance on *Hearn* is misguided for several reasons.

*First*, *Hearn* does not address contract formation at all. And the *Hearn* court certainly did not "rebuff[] Comcast . . . for making frivolous arguments" on contract formation. Opp'n at 7.

---

[9] "Dispute" is broadly defined as "any claim or controversy related to us or our relationship, including but not limited to any and all . . . claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise." Miriello Decl., Ex. C § 13(b).

10

Nor can *Hearn* be read to undermine the controlling holding in *Schwartz* that, under Pennsylvania law, "[w]hether or not [plaintiff] received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without becoming bound by that agreement." *Schwartz*, 256 F. App'x at 518 (emphasis added).[10]  *Second*, *Hearn* does not address equitable estoppel, much less purport to limit the principle to situations involving claims that "relate to" or "arise out of" an agreement.  *Finally*, *Hearn* is simply inapposite here.  *Hearn* turned in significant part on the plaintiff's status as a former customer.  *See id.* at 1164 (declining to compel arbitration of claims that were "temporally unmoored from the agreements containing the arbitration provisions").  No such temporal problem exists here, as Plaintiff continues to use the services at the Shelton Home.

## IV.    CONCLUSION

The Subscriber Agreement binds Plaintiff, and his claims fall squarely within the broad scope of his arbitration agreement with Comcast.  He has presented no evidence, argument or other basis on which to conclude otherwise, and this Court should compel his claims to arbitration and stay this action pending the resolution of any arbitral proceedings.

---

[10] Plaintiff's citations (Opp'n, n.6) to *Wexler v. AT & T Corp.*, *Revitch v. DirecTV, LLC*, *Cordoba v. DIRECTV, LLC*, and *In re Jiffy Lube Int'l, Inc., Text Spam Litig.* are similarly misplaced.  *Wexler* and *Revitch* both addressed whether a non-signatory could enforce an arbitration agreement between the non-signatory's affiliate and the signatory plaintiff, which is not at issue here.  *See Wexler*, 211 F. Supp. 3d 500, 502 (E.D.N.Y. 2016); *Revitch*, No. 18-01127, 2018 WL 4030550, at *1 (N.D. Cal. Aug. 23, 2018), *aff'd*, 2020 WL 5814095 (9th Cir. Sept. 30, 2020).  Nor was contract formation at issue in *Cordoba*—which was reversed by the Eleventh Circuit, *see Cordoba*, 347 F. Supp. 3d 1311, 1314 (N.D. Ga. 2018)*, rev'd*, 801 F. App'x 723 (11th Cir. 2020) (holding plaintiff's claim was within the scope of arbitration provision and reversing)—or *In re Jiffy Lube*, *see* 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012).

11

        Respectfully submitted,

        /s/ *Seamus C. Duffy*
        Seamus C. Duffy (ID No. 52501)
        Julie A. Busta (ID. No. 311933)
        Akin Gump Strauss Hauer & Feld LLP
        Two Commerce Square
        2001 Market St., Suite 4100
        Philadelphia, PA 19103
        Tel: 215-965-1200
        Fax: 215-965-1210
        sduffy@akingump.com
        jbusta@akingump.com

        Marshall L. Baker (*pro hac vice forthcoming*)
        Akin Gump Strauss Hauer & Feld LLP
        1999 Avenue of the Stars, Suite 600
        Los Angeles, CA  90067-6022
        Tel: 310-229-1000
        Fax: 310-299-1001
        mbaker@akingump.com

        Attorneys for Defendants
        Comcast Corporation and Comcast Cable
        Communications, LLC

**CERTIFICATE OF SERVICE**

I certify that on October 20, 2020, the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.


Dated: October 20, 2020                                            /s/ *Seamus C. Duffy*