IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON,** individually, and on behalf of all others similarly situated, *Plaintiff* | : : : : : | **CIVIL ACTION** NO. 20-1763 |
| v. | : : | |
| **COMCAST CORPORATION,** *et al.* *Defendants* | : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                          JANUARY 21, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a motion to compel arbitration filed by Defendants Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Defendants" or "Comcast"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14. [ECF 17]. Plaintiff James Everett Shelton ("Plaintiff") has opposed the motion. [ECF 20]. The issues raised by the parties have been fully briefed and are ripe for disposition.[1] For the reasons set forth below, Defendants' motion to compel arbitration is granted.

**BACKGROUND**

In the complaint, Plaintiff asserts claims against Defendants for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a, *et seq.*, premised on his allegations that Comcast checked his credit report without a permissible purpose. Defendants move to compel arbitration of these claims pursuant to an arbitration provision (the "Arbitration Provision") contained in various written materials that were originally provided to Plaintiff's household in 2006 on account of the opening of a Comcast account. In response to Defendants' motion, Plaintiff contends that

---

[1]      In adjudicating the underlying motion, this Court has also considered Defendants' reply. [ECF 22].

the Arbitration Provision is not binding on him because he was not a signatory to the Comcast Agreement for Residential Services (the "Subscriber Agreement") that contains the Arbitration Provision, pursuant to which Comcast provided his household television and internet services. The facts relevant to the validity and enforceability of the Arbitration Provision are set forth below.[2]

On September 24, 2006, a Comcast account (the "Shelton Household Account") was opened for cable and internet services provided at the home where Plaintiff resides and operates his personal business (the "Shelton Household"). Though the account was opened by Plaintiff's father, Comcast's business records (maintained in the ordinary course of business) indicate that both Plaintiff and his mother are also associated with the account. In addition, Plaintiff's personal cell phone number was provided as a contact number for the account.

As a matter of routine and regular business practice, Comcast sends a copy of its Subscriber Agreement to subscribers such as those in the Shelton Household who initiate service with Comcast. As permitted by its terms, the Subscriber Agreement was updated numerous times, including in 2017, when Comcast most recently mailed an updated version of the Subscriber Agreement to the Shelton Household.

The operative Subscriber Agreement provides, in relevant part, the following:

- "If you use or otherwise indicate your acceptance of the Service(s), you have accepted this Agreement and agree to be bound by its terms."
- "You acknowledge that you are accepting this Agreement on behalf of all persons who use the XFINITY Equipment and/or Service(s) at the Premises . . . and that you shall have sole responsibility for ensuring that all other users understand and comply with the terms and conditions of this Agreement and any applicable policies . . . ."

The Subscriber Agreement also notifies users on the first page and in bold type that: "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESEPECT TO ALL SERVICES(S).**" Under the

---

[2] The facts set forth herein are drawn from the complaint and the exhibits attached to the parties' briefs, including the sworn declarations of Nicole Patel, Marie Miriello, and Rachel Weinstein, Defendants' various custodians of records, and Plaintiff's own sworn declaration. For purposes of this motion, however, this Court will construe the facts and evidence in the light most favorable to the non-movant—here, Plaintiff.

heading "**BINDING ARBITRATION**," the agreement provides that "[a]ny Dispute involving you and [Comcast] shall be resolved through individual arbitration." The Subscriber Agreement defines "Dispute" as "any claim or controversy related to [Comcast] or our relationship, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise . . . ." The agreement also provides that the binding arbitration provision applies to all "users or beneficiaries of the Xfinity Service(s) or Equipment."[3]

Defendants' business records show, and Plaintiff does not dispute, that on July 29, 2020, Plaintiff made a service call to Comcast in connection with the Comcast services being provided to the Shelton Household. During this call, Plaintiff acknowledged using the Comcast services being provided to the Shelton Household. He also sought and obtained customer support in accessing programming provided by Comcast "on the Netflix app," which Plaintiff complained "doesn't work." During this call, Plaintiff also acknowledged setting up *his* account online at Xfinity.com. Notably, no calls from any other numbers associated with the Shelton Household Account are reflected in Comcast's records.

**LEGAL STANDARD**

When addressing a motion to compel arbitration, the Court must first determine which standard of review to apply: either the motion to dismiss standard under Federal Rule of Civil Procedure ("Rule") 12, or the motion for summary judgment standard under Rule 56. *Guidotti v. Legal Helpers Debt Resolution, LLC.*, 716 F.3d 764, 771-72 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74 (internal citations omitted). Where arbitrability is not apparent on the face of the complaint, "the issue should be judged under the Rule 56 standard." *Id.* Here, the issue of arbitrability is not apparent

---

[3] Beginning in 2007, Comcast's Subscriber Agreement contained an opt-out provision, which allowed subscribers to affirmatively opt out of the binding arbitration provision. This provision required subscribers to notify Comcast in writing within thirty days from receipt of the opt-out notice of the subscriber's decision to opt out. Comcast has no record of receiving any opt-out selection from the Shelton Household or for the Shelton Household Account within the prescribed time. However, on July 21, 2018, Plaintiff purported to opt out of the Arbitration Provision for the Shelton Household Account using Comcast's website. Such attempt was clearly untimely.

on the face of the complaint.  Moreover, Plaintiff challenges the validity and enforceability of the Arbitration Provision on the basis that he cannot be bound by it as a non-signatory.  When such a challenge is made, a motion to compel arbitration is properly reviewed under the motion for summary judgment standard.  *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co. Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).  Thus, this Court finds that the Rule 56 summary judgment standard is applicable to determining the validity and enforceability of the Arbitration Provision at issue.

When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A fact is "material" if its existence or non-existence may affect the outcome of litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In applying a Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party."  *Guidotti*, 716 F.3d at 772.

The moving party has the burden of showing the court "the absence of a genuine issue of material fact" by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322-23.  The non-moving party must then rebut the claim by "citing to particular parts of materials in the record, including, depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A-B).  The non-moving party must show more than "some metaphysical doubt as to the material facts," rather, the non-moving party must "go beyond the pleadings" and "show that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324.

**DISCUSSION**

Defendants move to compel the arbitration of this matter based on the Arbitration Provision, to which they contend Plaintiff is bound despite being a non-signatory. In opposing the motion, Plaintiff argues there is no existing basis on which he can be bound to the Arbitration Provision as a non-signatory. In light of the undisputed record evidence, this Court finds that Plaintiff actively sought and obtained benefits provided pursuant to the Subscriber Agreement, such that he is equitably estopped from avoiding the Arbitration Provision contained therein. As such, Defendants' motion to compel arbitration is granted.

The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). The primary substantive provision of the FAA (Section 2) provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). This provision "reflects the fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Further, § 2 "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (internal citations omitted).

Under the FAA:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an

order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* In so doing, the court "must resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). If the court determines that the case must be arbitrated, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Therefore, before compelling arbitration, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Throughout the inquiry, there is a presumption in favor of arbitrability. *Id.* In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

Here, there is no real dispute as to the existence of the Arbitration Agreement.[4] The only dispute is whether Plaintiff, a non-signatory to the Arbitration Agreement, is bound by it. Where a signatory to an arbitration agreement attempts to bind a non-signatory, the United States Court of Appeals for the Third Circuit has recognized under Pennsylvania law that the test to be applied is whether "the non-signatory knowingly exploits the agreement containing the arbitration clause

---

[4] Courts around the country, including this Court, have repeatedly found that a plaintiff's use of Comcast services binds them to the Comcast Subscriber Agreement, even in the absence of a signed agreement or evidence of the plaintiff's actual receipt of the subscriber agreement. *See Strange v. Comcast Corporation*, 2018 WL 6602072, at *4 (E.D. Pa. Dec. 14, 2018) (holding that silence or inaction (*i.e.*, continued use of the service) demonstrates that the subscriber has consented to the agreement."); *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (enforcing arbitration agreement and explaining that "[w]hether or not [plaintiff] received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without becoming bound by that agreement."). Here, there is no dispute that the Shelton Household received and accepted services tendered on the basis of the Subscriber Agreement.

despite having never signed the agreement." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199-200 (3d Cir. 2001). As further explained by the Third Circuit in *Griswold v. Coventry First LLC*, 762 F.3d 264 (3d Cir. 2014), a party "knowingly exploits" an agreement either "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims based on the contract's other provisions." *Id*. at 271-72 (citations omitted). "Under the first theory, courts prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *E.I. DuPont*, 269 F.3d at 200.

Under this applicable law, Plaintiff is equitably estopped from avoiding the Arbitration Provision if he "knowingly exploited" the Subscriber Agreement by seeking and obtaining benefits provided under the agreement. *Griswold*, 762 F.3d at 271-72. On the existing record, there is no dispute that Plaintiff sought and obtained benefits under the Subscriber Agreement. Though it was other members of Plaintiff's household who originally contracted for Comcast's services pursuant to the Subscriber Agreement, over the years of that contractual relationship, Plaintiff sought and obtained benefits under the agreement by, not only using the Comcast services provided under the agreement at the Shelton Household, but also by exercising control over the account. For example, the following is undisputed:

- Plaintiff lists the Shelton Household as his own home and place of employment;
- Plaintiff associated his own personal cell phone with the Shelton Household Account;
- Plaintiff placed a service call regarding the Shelton Household Account on January 29, 2020;
- During service call, Plaintiff acknowledged using the Comcast services and setting up *his* account online and sought customer service.

On this undisputed record, "Plaintiff[] did more than just passively benefit from the services;" he exercised control over the account. *Montoya v. Comcast Corp.*, 2016 WL 5340651, at *4 (E.D. Cal. Sept. 23, 2016) (finding that plaintiff "actively utilized the infrastructure of [Comcast]'s company by asking for additional [] measures [from Comcast]."). As a result, Plaintiff is equitably estopped from avoiding the arbitration provision contained in the Subscriber Agreement. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 327-28 (W.D. Pa. 2020) (compelling arbitration where defendant, a non-signatory, received a direct benefit flowing from the agreement that contained an arbitration provision); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 274-75 (E.D.N.Y. 2019) (compelling husband's claims to arbitration because he "knowingly accepted the benefit of [his wife's] contractual relationship with Amazon" and so "must also be held to the arbitration clause that governs that relationship."); *Montoya*, 2016 WL 5340651, at *1 (finding "Plaintiff['s] admitted use of [Comcast's] service demonstrates Plaintiff[] knowingly exploited the agreement for [Comcast's] services.").

Turning next to the scope of the Arbitration Provision, it is clear that Plaintiff's claims fall within it. As noted, the term "dispute" in the Arbitration Provision is defined broadly as "any claim or controversy related to [Comcast] or our relationship, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise . . . ." As pled in the complaint, Plaintiff contends that Comcast violated the FCRA by checking his credit report without a permissible purpose in June 2018. Particularly in light of the presumption in favor of arbitrability, such claim clearly relates to Comcast and/or Plaintiff's relationship with Comcast. *See Chassen v. Fid. Nat'l Fin. Inc.*, 836 F.3d 291, 295 (3d Cir. 2016) (noting that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability.'")

8

(quoting *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24-25); *Strange v. Comcast Corp.*, 2018 WL 6602072, at *4 (E.D. Pa. Dec. 14, 2018) (compelling arbitration of TCPA and Sherman Antitrust claims under identical arbitration provision); *O'Neil v. Comcast Corp.*, 2019 WL 952141, at *4 (N.D. Ill. Feb. 27, 2019) (compelling arbitration of statutory consumer protection claims under identical arbitration provision). Thus, this Court finds that the allegations presented in the complaint fall within the purview of the Arbitration Provision in the Subscriber Agreement.

**CONCLUSION**

For the reasons stated herein, Defendants' motion to compel arbitration is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.